FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------X

LOIS HERRERA, JAYE MURRAY and
LAURA FEIJOO,

     *Plaintiffs,*

  -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
and RICHARD CARRANZA, Chancellor of New York
City Department of Education, Individually,

     *Defendants.*

----------------------------------------------------------------------X

**Index No.: 155316/2019**

**SECOND AMENDED**
**VERIFIED COMPLAINT**

Plaintiffs Lois Herrera, Jaye Murray and Laura Feijoo, as and for their Second Amended

Verified Complaint, respectfully allege, all upon information and belief, as follows:

## IDENTITY OF PARTIES

1.  At all relevant times mentioned herein, Plaintiff Lois Herrera ("Herrera"), who is a

Caucasian woman, has been employed by Defendant New York City Department of Education

("DOE") since 1986 and, until her recent demotion, served as the Chief Executive Officer of the

Office of Safety and Youth Development ("OSYD").

2.  At all relevant times mentioned herein, Plaintiff Jaye Murray ("Murray"), who is a

Caucasian woman, has been employed by Defendant DOE since 2006 and, until her recent

demotion, served as Executive Director to the Office of Counseling Support Programs ("OCSP").

3.  At all relevant times mentioned herein, Plaintiff Laura Feijoo ("Feijoo"), who is a

Caucasian woman, has been employed by Defendant DOE since 1989 and, until her recent

demotion, served as Senior Supervising Superintendent.

4.  At all relevant times mentioned herein, Defendant New York City Department of

Education ("the DOE") was and is a New York City governmental agency responsible for the

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM          INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                        RECEIVED NYSCEF: 08/12/2021

administration of New York City's public school system, which is located in the City and State of New York.

5.      Since April 2018, Defendant Richard Carranza ("Carranza") has been the Chancellor of DOE and in that role oversees the DOE, including the employment relationship between the DOE and Herrera, Murray and Feijoo, respectively.

6.      Plaintiffs bring this action against DOE and Carranza for unlawful race and gender discrimination and retaliation under the New York City Human Rights Law because Carranza has improperly conflated the daunting task of addressing tough socioeconomic challenges facing many of the students in the New York City public school system with a discriminatory belief that Caucasians in the DOE workplace, particularly more senior Caucasian women, are causing or exacerbating those challenges, even though Plaintiffs and other similarly situated DOE employees have led meaningful change for students attending all of New York City's public school districts for decades, and their achievements have been and are being celebrated by DOE and the New York City government to this day.

7.      In acting to address his misguided belief, Carranza has completely disregarded the Human Rights Law by targeting and stripping Caucasian employees, particularly women, from the ranks of DOE senior management on the basis of their race and gender.

8.      The DOE and Carranza replaced Plaintiffs with non-Caucasians because of their race, even though many if not all of these newly appointed leaders did not apply for their positions through the standard managerial processes that require the public posting of vacancies, transparent application submission process, as well as minimum educational and New York State certification requirements.

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

INDEX NO. 155316/2019

NYSCEF DOC. NO. 16

RECEIVED NYSCEF: 08/12/2021

9.      As a result, the newly appointed leaders of DOE are woefully less prepared and qualified than their predecessors, demonstrating that there was no legitimate reason for these personnel changes other than discrimination.

10.      DOE, under Carranza's leadership permits, condones and supports newly appointed supervisors to systematically target their Caucasian colleagues on the basis of their race.

11.      Furthermore, under Carranza's leadership, DOE has swiftly and irrevocably silenced, sidelined and punished Plaintiffs and other Caucasian female DOE employees on the basis of their race, gender and their unwillingness to accept their other colleagues' hurtful stereotypes about them.

12.      Carranza's DOE has permitted newly appointed leaders to adopt Plaintiffs' successes as their own victories and required Plaintiffs to accept degrading roles that do nothing more than permit them to consult with their replacements on issues they once supervised and managed.

## BACKGROUND RELEVANT TO HERRERA CAUSES OF ACTION

13.      Over the course of her professional career, Herrera has earned a Master's Degree from Harvard University Graduate School of Education, where she studied counseling and consulting psychology, has studied at Columbia Teacher's College, received an undergraduate degree from Mount Holyoke College and has earned professional certifications from the City and State of New York related to School District Administration, School Building Leadership, Education Administration, Supportive Services Instruction, Supervision of Guidance and Bilingual Guidance Counselorship.

14.      Herrera commenced her employment with DOE in or around 1986 as a Guidance Counselor and was promoted numerous times, first to District Assistant Director of Pupil

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

Personnel, then a School Administrator, Central Director, Senior Executive Director, Deputy Chief Executive Officer, and finally, Chief Executive Officer of DOE Office of Safety and Youth Development ("OSYD"), which position she held until she was unlawfully demoted in September 2018 because of her race.

15.     At all relevant times, Herrera was fully qualified for her position with DOE, as confirmed by, among other things, her educational background, certifications, positive performance evaluations, the feedback, promotions and increases in compensation she received, and her remarkable longevity with DOE.

16.     Further demonstrating her qualification and recent positive performance, while Herrera was the CEO of OSYD, New York City Hall widely publicized that the 2017 school year was the "safest year on record" in the New York City public schools.

17.     At all relevant times, Herrera worked predominantly out of DOE Headquarters, located at the Tweed Courthouse, 52 Chambers Street, in Manhattan ("Headquarters" or "Tweed").

18.     In her role as Chief Executive Officer, Herrera reported to a Deputy Chancellor, who in turn reported to the Chancellor.

19.     In or around April 2018, New York City Mayor William DeBlasio appointed Carranza to the position of Chancellor of DOE.

20.     Soon after he became Chancellor, in or around June 2018, Carranza appointed LaShawn Robinson ("Robinson"), who is African American, as Deputy Chancellor of School Climate and Wellness, and in that role Robinson supervised Herrera in her position as Chief Executive Officer of OSYD.

21.     Herrera learned from another Senior Administrator that Robinson expressed a discriminatory bias against her Caucasian colleagues on a number of occasions leading up to her

4

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

promotion to Deputy Chancellor, including on or about May 4, 2018, at the "Border Crossers" Training in her former role as the Executive Superintendent of the Office of Equity and Access, condoning the trainer instructing the audience (all employees of DOE and many of whom were mandated to attend by senior DOE leadership, including Robinson) that, in order to accomplish equity, **"White colleagues must take a step back and yield to colleagues of color"** and **"Recognize that values of White culture are supremacist,"** and during this training, **learning that Robinson told another DOE employee that "We've all taken on Whiteness."**

22.     Robinson also regularly advised her subordinates that she would "disrupt and dismantle" the work of Caucasian employees, and the phrase "disrupt and dismantle" became a mantra often used by Carranza's administration as justification to marginalize the roles and responsibilities of Caucasian employees, especially Caucasian women in leadership positions.

23.     On June 27, 2018, Carranza addressed the restructuring of his administration, including Robinson's promotion, from the rotunda of Tweed, announcing to all DOE employees at Tweed that "If you draw a paycheck from DOE," you will either "Get on board with [his] equity platform or leave," a totalitarian threat to his employees' salaries and financial future that Carranza used to silence the Caucasian DOE employees impacted by his discriminatory actions for no reason other than their race.

24.     On June 29, 2018, soon after Carranza was appointed Chancellor and Robinson was appointed Deputy Chancellor, Carranza and Robinson further confirmed to Herrera that they held discriminatory animus against Caucasians when, during a DOE event for graduating and college-bound high school seniors who currently lived in temporary housing, they gave Superintendent Donald Conyers ("Conyers") a standing ovation after he welcomed the audience by saying, "I'm so glad to see a sea of Black and Brown children" and then gave another standing ovation when

5

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

INDEX NO. 155316/2019

NYSCEF DOC. NO. 16

RECEIVED NYSCEF: 08/12/2021

another invited presenter read an original poem that warned racial minority students against Caucasians.

25.     DOE condoned Conyers' message at its event, as confirmed by Carranza and Robinson's standing ovation of Conyers, which distressed and marginalized Herrera, who was in the audience.

26.     In or around June 2018, Chris Groll ("Groll"), the new Chief Operating Officer for the Division where Herrera now worked, asked Herrera when she intended to retire.

27.     On August 8, 2018, at another scheduled event called the "First Divisional Professional Learning Session," Robinson asked other attendants at the event, including Herrera, how long each of them had been working for DOE, and after each had responded, Robinson stated, "If you've been with the DOE for more than 20 years, you are responsible for the problem," which Robinson indicated was a problem regarding perceived racial inequities in the administration of DOE.

28.     Robinson's statement made clear to Herrera that Robinson would stop at nothing to rid her ranks of Caucasians, including Herrera, despite Herrera's body of anti-bias work including her leading role in the DOE's "Respect For All" initiative.

29.     From the moment Robinson had managerial authority over Herrera, she treated Herrera less well than the non-Caucasian on her staff, including berating her in front of subordinate members of her staff and removing critical functions of her role.

30.     Soon thereafter, in or around August 2018, Groll again asked Herrera when she intended to retire.

31.     On September 7, 2018, DOE and Carranza stripped Herrera of her position as CEO of OSYD and replaced her with her subordinate Mark Rampersant ("Rampersant"), an African

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                            RECEIVED NYSCEF: 08/12/2021

American man who was promoted without conducting a formal search or interview process and was demonstrably less qualified than Herrera and other similarly situated employees who underwent a formal interview process with DOE before being appointed to their respective positions.

32.     DOE relegated Herrera to essentially the bottom of the reporting structure of the group she formerly led, as she was demoted three (3) administrative steps below her previous title, from Chief Executive Officer to "Senior Administrator" and was told that she would "consult" with the new reporting structure on issues that she used to supervise and manage, which was an outrageous and humiliating demotion.

33.     When Herrera asked Robinson during the meeting in which she was informed of her demotion whether the decision was performance based, Robinson indicated that it was not and that the DOE had decided to go "in a different direction," which confirmed to Herrera that her race and gender played a role in the decision to demote her.

34.     Upon information and belief, Carranza, Robinson and DOE did not open Herrera's position to other candidates (especially Caucasian women candidates), and did not conduct any meaningful search for a replacement for Herrera, and instead focused its decision to demote Herrera and promote Rampersant based on their respective racial identities.

35.     Cruelly, DOE required Herrera to attend the celebration for Rampersant's promotion into her former role and made no effort to move Herrera out of the shared office with the rest of the team that she used to lead, even though Herrera immediately requested a new desk at Tweed, which served to constantly remind Herrera of how far she had fallen.

36.     Herrera was humiliated by this clear demotion, after 30 years of positive performance in her many roles with the DOE.

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

37.    Herrera's successor, Rampersant, even made a point to schedule a meeting with Herrera on the same day that DOE demoted Herrera, to explain that he did not have anything to do with the decision to demote Herrera and be promoted to her role, which confirmed that the top of the DOE organizational structure was changing the reporting structure unilaterally.

38.    During the meeting with Herrera, Rampersant even confirmed to Herrera that "they have a ton of people coming in, from what I understand, nine, including one that will be in charge of counseling support programs," which was Co-Plaintiff Murray's role.

39.    When Herrera asked whether there was a formal application process underway for replacing DOE leaders like Murray, he became flustered and could not explain how these promotions were possible without a formal interview process or consideration of the people who were currently appointed, which alarmed Herrera that these decisions were being made on the basis of race and in the shadows, without transparency expected and required for DOE promotions.

40.    Even though Robinson demoted Herrera, she took credit for Herrera's work, as she did at a hearing before the New York City Council on September 20, 2018 regarding DOE's report on School Safety and Emergency Preparedness.

41.    Before the aforementioned meeting at the New York City Council, Robinson required Herrera to prepare the presentation, which highlighted the accomplishments that OSYD achieved under Herrera's leadership, but otherwise completely excluded Herrera from any aspect of the presentation, other than permitting Herrera to pass notes with answers to the questions the New York City Council posed to the all-African-American presenters from DOE, effectively adopting Herrera and her team's successes as their own.

42.    Despite suffering weeks of humiliation as a result of not having her workstation reassigned from the room where she would have had to sit in close quarters with the individuals

8

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

that she supervised for many years, and having to work from other employees' stations, conference tables and cafeteria tables, Herrera's follow up requests for a new work station were ignored, even though there were open workstations.

43.     Before finding Herrera a new workstation, DOE used the opportunity of Herrera avoiding her current desk to unilaterally move her belongings into boxes and put the boxes under the stairwell for everyone in the office to see, which signaled to Herrera that she was not going to be accommodated at Headquarters, and would instead either be forced to retire or be assigned somewhere else.

44.     Eventually, in or around October 2018, DOE reassigned Herrera to its Fordham Plaza office in the Bronx, her clear second choice to her initial request to be moved within Headquarters at Tweed.

45.     In or around the beginning of October 2018, Herrera learned that OSYD staff members attended a retreat with upper management, where DOE advised that new changes would be made in the reporting structure of OSYD, with the three highest ranking Caucasian women in OSYD being replaced by African Americans, who were each objectively less qualified for the roles even by the metrics DOE adopted to promote individuals within its ranks.

46.     During this same retreat, DOE used a video for professional development that blamed the proliferation of predominantly Caucasian suburbs for creating poverty, lack of education, and poor job attainment for African Americans, without any substantive purpose for the development of the professionals in the audience, which exacerbated the open hostility against Caucasian employees within the ranks of DOE.

47.     Over the subsequent months, OSYD engaged in a rapid hiring process, where little to no Caucasian women were even considered for the vacant positions.

9

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

INDEX NO. 155316/2019

NYSCEF DOC. NO. 16

RECEIVED NYSCEF: 08/12/2021

48.      Many of the incoming candidates that were ultimately selected were less qualified than their predecessors in education, work experience and New York State certifications, which are metrics and requirements used by DOE to promote individuals.

49.      Tellingly, many if not all of the positions were filled before they were posted internally, meaning DOE, and specifically Carranza and Robinson, had selected candidates outside of the process required for promotions in DOE and without regard for the standards set for promotions.

50.      During this same period of time, DOE senior leadership forced out older Caucasian women from their roles and have rarely considered those same employees for promotion to new roles, if at all.

51.      On or about October 24, 2018, Herrera complained in writing to DOE about the discrimination she had been forced to endure on the basis of her race and gender since Carranza and Robinson have led DOE.

52.      Herrera specifically complained that even while she was being demoted, Robinson told her, "I don't know where you stand but I will just have to accept you where you are," which in context could only mean that Robinson was unsure whether, given Herrera's racial identity, she could be trusted to work for the benefit of other racial identities, which was deeply hurtful and upsetting to Herrera.

53.      DOE did not take any steps to address Herrera's complaint, and instead left her on the sidelines, with very little job responsibility or oversight, eviscerating her chances for promotions within DOE.

54.      Tellingly, in a professional development workshop within the DOE administration subsequent to her complaint, entitled the "Election Day" training, which was organized by and

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

condoned by Carranza and Robinson, Herrera learned that an African American presenter stated that there were a set of "White middle class values" that were plaguing society, sharing her message in terms of "Us" vs. "Them" when referring to Caucasians, and another presenter crassly compared the suspension of African American male students to the Holocaust.

55.     On or about November 16, 2018 the OSYD Twitter feed, now being administered or condoned by Carranza, Robinson and other high ranking officials at DOE, tweeted that OSYD is "Engaging in some courageous conversations about the systematic structures rooted in white cultural norms that be must addressed from the top within our own organization," which signaled to Herrera that DOE believed that Caucasian people were a problem and that there was no place for Caucasian employees to be leaders in a conversation about racial inequality, which was extremely hurtful and degrading to Herrera, who had worked tirelessly for decades to make the DOE a better opportunity for education and advancement for children of all backgrounds and identities.

56.     As a result of Defendants' discriminatory conduct, Herrera has suffered the adverse effects of discrimination, the quality of her life has been irreparably damaged and her self-esteem, self-respect and well-being has been irreversibly harmed because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Herrera into the future.

## BACKGROUND RELEVANT TO MURRAY CAUSES OF ACTION

57.     Murray repeats, re-alleges and incorporates in full paragraphs 1 through 56 of this Complaint as though fully set forth at length herein.

11

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

58.     Before beginning her career with DOE, Murray earned a Masters of Social Work degree from Fordham University, a Masters of Arts in Writing degree from Manhattanville College and her undergraduate degree from Concordia College.

59.     Murray also came to DOE as a licensed clinical social worker who has taught graduate level courses in social work and educational leadership and published novelist of an award winning young adult novel geared towards managing addiction at that age.

60.     Murray commenced her employment with DOE in or around 2006 as a School Social Worker and has been promoted numerous times, first to Social Worker/Dean of Discipline, then to Director of Student Services/Youth Development, then Senior Administrator of Guidance and School Counseling, and then, most recently in August 2015, to Executive Director of the DOE Office of Counseling Support Programs ("OCSP"), a position that she held until she was unlawfully demoted in September 2018 because of her race.

61.     At all relevant times, Murray was fully qualified for her position with DOE, as confirmed by, among other things, being awarded New York State School Social Worker of the Year in role as Executive Director, her education, certifications, positive performance evaluations, the feedback, promotions and increases in compensation she received, as well as her remarkable longevity with DOE.

62.     At all relevant times, Murray worked predominantly out of DOE Headquarters, located at the Tweed Courthouse, 52 Chambers Street, in Manhattan.

63.     In her role as Executive Director, Murray reported into a Deputy Chancellor, who in turn reported into the Chancellor.

64.     In or around June 2018, after New York City Mayor William DeBlasio appointed Carranza as Chancellor of DOE, Carranza expressed an ongoing agenda targeted specifically at

12

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

placing individuals in positions of authority based on race, including but not limited to the ranks of subordinates in positions of managerial authority at DOE.

65.     Soon after Carranza became Chancellor, he appointed LaShawn Robinson ("Robinson"), who is African American, as the Deputy Chancellor that would supervise Murray in her position as Executive Director.

66.     Murray very quickly feared that she would be targeted by Carranza because of her race when, on June 27, 2018, Carranza addressed the restructuring of his administration, including Robinson's promotion, from the rotunda of Tweed, announcing to all DOE employees at Tweed that "If you draw a paycheck from DOE," you will either "Get on board with [his] equity platform or leave."

67.     Murray was dismayed two days later when, on June 29, 2018, soon after Carranza was appointed Chancellor and Robinson was appointed Deputy Chancellor, Murray endured Carranza and Robinson giving Superintendent Donald Conyers ("Conyers") a standing ovation after he welcomed the audience by saying, "I'm so glad to see a sea of Black and Brown children," and then gave another standing ovation when another invited presenter read an original poem that warned racial minority students against Caucasians.

68.     Additionally, in Robinson's first and only one-to-one meeting with Murray, which lasted 15 minutes, Robinson asked Murray "Where are you from?" and when Murray responded that she was raised in a suburb town in Westchester County, New York, Robinson asked little else, including anything related to her ongoing projects and work streams, which signaled to Murray that Robinson was not interested in getting to know Murray or her work.

69.     From the moment Robinson had managerial authority over Murray, she treated Murray less well than the non-Caucasian women on her staff, including excluding Murray from

13

Case 1:21-cv-07555-MKV Document 1-3 Filed 09/10/21 Page 14 of 48

INDEX NO. 155316/2019
NYSCEF DOC. NO. 16
RECEIVED NYSCEF: 08/12/2021

important work meetings, including meetings related to union negotiations regarding the social workers and guidance counselors whose positions fell under the auspices of Murray's office.

70.     Robinson's actions made clear to Murray that she would stop at nothing to rid her ranks of Caucasians, including Murray and despite Murray's body of anti-bias work, which included her leading role in developing the DOE's "Unpacking Racism" workshops, hiring the DOE's first citywide LGBT Community Liaison and first Gender Equity Coordinator and designing and leading the Mayor's Equity and Excellence initiative with Single Shepherd.

71.     In an effort to convince Robinson of her value, Murray sent Robinson an Executive Summary Report of the accomplishments of her office during the previous school year, including a video recording of a racial equity presentation Murray gave at Medgar Evers College.

72.     Robinson completely ignored Murray, confirming that Robinson only saw Murray as a Caucasian woman, not as a dedicated, contributing leader of the DOE.

73.     Soon thereafter, Murray was notified that OCSP would no longer operate as a stand-alone office and would instead report into OSYD.

74.     Murray also learned that she would be reporting to Rampersant, an African American man, who had been named CEO of OSYD in place of co-Plaintiff Herrera, who had already been demoted from her leadership position with OSYD despite her more relevant experience and training.

75.     By reporting into a CEO instead of a Deputy Chancellor, the DOE had already demoted Murray one administrative step.

76.     Robinson confirmed to Murray that her demotion was simply that DOE had decided to go "in a different direction," as opposed to her performance, which confirmed to Murray that her race and gender played a role in her demotion.

14

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

77.     In or around September 2018, DOE further demoted Murray when Robinson told Murray's subordinates that they would now report to Kenyatte Reid ("Reid"), who has no work experience as a counselor or social worker and who also reports into Rampersant, before even telling Murray.

78.     Upon information and belief, Reid, who is an African American man, was promoted without conducting a formal search or interview process, which was required of other similarly situated employees who underwent a formal interview process with DOE for their respective positions.

79.     Another video used for professional development during the same training blamed the proliferation of predominantly Caucasian suburbs for creating poverty, lack of education, and poor job attainment for African Americans, which video did not provide any substantive purpose for the development of the professionals in the audience other than to indoctrinate them into believing that focusing on the race of DOE employees will improve its performance, which instead exacerbated the open hostility against Caucasian employees within the ranks of DOE, including Murray.

80.     In October 2018, DOE removed Murray as Executive Director of OCSP and replaced her with Gillian Smith ("Smith"), who immediately began a campaign to degrade Murray, including requiring Murray to report her work in 30 minute intervals, which upon information and belief is not a practice adopted by DOE, even as the DOE was receiving commendations for the programs that OCSP developed under Murray's leadership.

81.     As a result of this demotion, Murray is no longer an Executive Director, but rather is now a lower designated Director, and reports three levels down from the Deputy Chancellor position that she reported into before Robinson and Carranza took office.

15

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

82.     Upon information and belief, Smith was hired without a formal posting outside of the DOE's managerial hiring process, is not a trained counselor or social worker and has no demonstrable work experience with developing counseling programs and is otherwise less qualified than Murray to lead OCSP.

83.     Further demonstrating the haphazard manner in which Caucasian employees were being relegated and demoted at DOE, Rampersant notified Murray of her demotion no more than five minutes before he announced her replacement at an OSYD retreat titled, "The Power of Us."

84.     Murray has not received a title or clear job description since her demotion and instead reports to Smith in a consultancy role, with very little work flow responsibility.

85.     In or around October 2018, Murray complained to DOE's internal Office of Equal Opportunity ("OEO") about the discrimination she has been forced to endure under Carranza's leadership of DOE, which complaint has been ignored.

86.     Later that same month, Murray complained to her supervisors and DOE about the discrimination that she has been forced to endure, on the basis of her race and gender, since Carranza and Robinson have lead DOE.

87.     DOE has not taken any steps to address Murray's complaints and instead has left her on the sidelines, with very little job responsibility or oversight, eviscerating her chances for stability and promotions within DOE.

88.     In early 2019, Smith began to regularly meet with Murray's last two subordinate employees individually and gave them direction without Murray's input or knowledge, which has impacted what little job assignment that the DOE has given to Murray, and fully relegated Murray to the sidelines.

16

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

89.     Alarmingly, Murray's supervisors have recently began using Murray's known disability and need for a reasonable accommodation as a means to further harass and bully Murray, by using the interactive process to scrutinize Murray and otherwise treat Murray less well than other DOE employees who require reasonable accommodations.

90.     As a result of Defendants' discriminatory conduct, Murray has suffered the adverse effects of discrimination, the quality of her life has been irreparably damaged and their self-esteem, self-respect and well-being has been irreversibly harmed because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Murray into the future.

**BACKGROUND RELEVANT TO FEIJOO CAUSES OF ACTION**

91.     Feijoo repeats, re-alleges and incorporates in full paragraphs 1 through 90 of this Complaint as though fully set forth at length herein.

92.     Feijoo earned a Doctorate degree in School Leadership from New York University and a Professional Diploma in School Administration, a Master's Degree in Special Education, and a Bachelor's Degree in Education, all from Queens College.

93.     Feijoo commenced her employment with DOE during the 1989 academic year as a Teacher and quickly ascended the ranks of the DOE, first to Assistant Principal, then Principal, then Superintendent, then Executive Officer for Instruction, then Deputy Senior Supervising Superintendent, then Senior Superintendent, and finally in or around the 2014 academic school year, to the position of Senior Supervising Superintendent, which she held until she was unlawfully demoted in or around June 2018 because of her race and gender.

17

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

94.     At all relevant times, Feijoo was fully qualified for her position with DOE, as confirmed by, among other things, her education, positive performance evaluations and the feedback, promotions and increases in compensation she received.

95.     At all relevant times, Feijoo reported to DOE Headquarters, located at the Tweed Courthouse, 52 Chambers Street, in Manhattan.

96.     In her role as Senior Supervising Superintendent, Feijoo supervised all 46 other Superintendents in the New York City public school system and reported into the Senior Deputy Chancellor, who reported into the Chancellor, although Feijoo was also a designated member of Chancellor Fariña's cabinet, where she had regular opportunity to meet directly with the Chancellor to discuss and advise about expectations for the direction of DOE.

97.     In or around April 2018, when New York City Mayor William DeBlasio appointed Carranza as Chancellor of DOE, Carranza skipped over Feijoo without even interviewing her to appoint African American Cheryl Watson-Harris ("Watson-Harris") to the position of First Deputy Chancellor.

98.     At the time of her promotion to First Deputy Chancellor, Watson-Harris was a member of Feijoo's Senior Deputy Chancellor team overseeing Field Support Centers.

99.     Watson-Harris was not qualified to fulfill the role of First Deputy Chancellor when she was appointed, as tellingly, she did not possess a necessary license for the role, so rather than appoint the qualified Feijoo, Carranza and the DOE created a "transition period" between Feijoo and Watson-Harris to permit Watson-Harris time to obtain a license that was a prerequisite for all candidates to be considered for the role in the past.

100.     Starting in or around May 8, 2018, Watson-Harris held meetings with only African American Superintendents and began choosing her immediate subordinates from that group.

18

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

101.    Soon thereafter, on June 5, 2018, Carranza met with Feijoo, and, while reading from a pre-written script, he advised Feijoo that her role at DOE would "change" but did not offer specifics.

102.    Watson-Harris obtained her license on June 26, 2018, and one month later, on July 27, 2018, Feijoo was told that the "transition period" between Feijoo and Watson-Harris was over.

103.    Soon thereafter, Feijoo learned that her new role following the "transition period" would constitute a demotion, as Watson-Harris rid her ranks of Caucasian women, including Feijoo, and appointed African American Donald Conyers to the role of Senior Superintendent and promoted nine (9) employees, some of whom had no prior superintendent experience, into a newly created role of "Executive Superintendent."

104.    None of the nine (9) appointed Executive Superintendents were Caucasian women.

105.    Although the role of Senior Superintendent and Executive Superintendent combined to perform some of the functions of Feijoo's old role, she was not appointed to any of those newly created positions, despite her relevant experience and qualifications.

106.    Given that Feijoo's former role was Senior Supervising Superintendent and she was not appointed to the role of Senior Superintendent or Executive Superintendent, her new role constitutes a demotion of at least three (3) administrative steps in the reporting structure.

107.    On June 25, 2018, Feijoo again met with Carranza, who this time advised Feijoo that her new role would be in labor relations and that she would be reporting into the Chief Operating Officer's ("COO") line, but not into the COO directly, and that all of Feijoo's former functions would be absorbed by Watson-Harris and the new non-Caucasian female ranks that she had assembled.

19

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

108.   In designating Feijoo for this role in labor relations, Carranza also attempted to remove Feijoo's designation as a Superintendent from her title, a title she had held for decades, which was extremely demoralizing to Feijoo.

109.   At least in part because she is a Caucasian woman, Carranza first relegated Feijoo to the position of "Senior Advisor of Labor & Policy," a designation which all but assured Feijoo would be sidelined from continuing the work she spent her career achieving because of her race.

110.   Carranza made it clear to the employees of DOE, including Feijoo, that race had motivated his employment decisions when, two days later, on June 27, 2018, he advised the Field Support Center Executive Directors and Superintendents that they should "Get on board with his equity platform or leave" and that "It was *their* time," which made it clear to Feijoo that Carranza viewed his employees as an "Us vs. Them" situation based entirely upon racial identity.

111.   Feijoo pleaded with Edie Sharpe, Carranza's Chief of Staff, to at least retain her designation as a Superintendent, which reluctantly was permitted, changing her title to Senior Superintendent of Labor and Policy, a title that carried no significant change in responsibility from Senior Advisor, only title, confirming that despite her title Feijoo remained demoted in responsibility.

112.   Carranza and Watson-Harris announced Feijoo's demotion to her team at Headquarters without Feijoo even being present.

113.   Since being demoted, DOE and Carranza permitted Watson-Harris and others to sideline Feijoo and only permit her to consult with the decision makers who now control the work flow she once supervised and managed as Senior Supervising Superintendent, which has had devastating effect on Feijoo and her career.

20

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

114.    After months of being sidelined with very little job responsibility, Feijoo left the DOE on June 28, 2019.

115.    As a result of Defendants' discriminatory conduct, Feijoo has suffered the adverse effects of discrimination, the quality of her life has been irreparably damaged and their self-esteem, self-respect and well-being has been irreversibly harmed because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Feijoo into the future.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF HERRERA AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

116.    Herrera repeats, re-alleges and incorporates in full paragraphs 1 through 115 of this Complaint as though fully set forth at length herein.

117.    At the time Herrera was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her race.

118.    Throughout the time of her employment with Defendants, Herrera was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

119.    Defendants treated Herrera less well because of her race and took adverse employment action against her by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

120.    The circumstances surrounding Defendants' conduct towards Herrera, including the condonation of racist professional development trainings and other presentations, gives rise to a very real inference that the actual basis for Defendants' actions towards Herrera was race discrimination.

21

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

121.    The aforementioned acts of Defendants constitute unlawful discrimination against Herrera in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... race . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

122.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Herrera pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

123.    Herrera has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Herrera's human rights, all of which has impacted her well-being and the quality of her life.

124.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Herrera has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Herrera alleges to be in the amount of Ten Million Dollars ($10,000,000).

125.    Herrera, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000).

### AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF HERRERA AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

126.    Herrera repeats, re-alleges and incorporates in full paragraphs 1 through 125 of this Complaint as though fully set forth at length herein.

127.    At the time Herrera was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

128.    Throughout the time of her employment with Defendants, Herrera was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

129.    Defendants treated Herrera less well because of her gender and took adverse employment action against her by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

130.    The circumstances surrounding Defendants' conduct towards Herrera gives rise to a very real inference that the actual basis for Defendants' actions towards Herrera was gender discrimination.

131.    The aforementioned acts of Defendants constitute unlawful discrimination against Herrera in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

132.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Herrera pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

133.    Herrera has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Herrera's human rights, all of which has impacted her well-being and the quality of her life.

134.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Herrera has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Herrera alleges to be in the amount of Ten Million Dollars ($10,000,000).

135.    Herrera, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000).

### AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF MURRAY AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

136.    Murray repeats, re-alleges and incorporates in full paragraphs 1 through 135 of this Complaint as though fully set forth at length herein.

137.    At the time Murray was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her race.

24

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM     INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                        RECEIVED NYSCEF: 08/12/2021

138. Throughout the time of her employment with Defendants, Murray was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

139. Defendants treated Murray less well because of her race and took adverse employment action against her by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

140. The circumstances surrounding Defendants' conduct towards Murray, including the condonation of racist professional development trainings and other presentations, gives rise to a very real inference that the actual basis for Defendants' actions towards Murray was race discrimination.

141. The aforementioned acts of Defendants constitute unlawful discrimination against Murray in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... race . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

142. As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Murray pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

143. Murray has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants'

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
INDEX NO. 155316/2019
NYSCEF DOC. NO. 16
RECEIVED NYSCEF: 08/12/2021

outrageous conduct in violation of Murray's human rights, all of which has impacted her well-being and the quality of her life.

144.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Murray has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Murray alleges to be in the amount of Ten Million Dollars ($10,000,000).

145.    Murray, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000).

### AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF MURRAY AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

146.    Murray repeats, re-alleges and incorporates in full paragraphs 1 through 145 of this Complaint as though fully set forth at length herein.

147.    At the time Murray was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

148.    Throughout the time of her employment with Defendants, Murray was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

149.    Defendants treated Murray less well because of her gender and took adverse employment action against her by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
INDEX NO. 155316/2019
NYSCEF DOC. NO. 16
RECEIVED NYSCEF: 08/12/2021

150.    The circumstances surrounding Defendants' conduct towards Murray gives rise to a very real inference that the actual basis for Defendants' actions towards Murray was gender discrimination.

151.    The aforementioned acts of Defendants constitute unlawful discrimination against Murray in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

152.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Murray pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

153.    Murray has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Murray's human rights, all of which has impacted her well-being and the quality of her life.

154.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Murray has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Murray alleges to be in the amount of Ten Million Dollars ($10,000,000).

27

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM INDEX NO. 155316/2019

NYSCEF DOC. NO. 16 RECEIVED NYSCEF: 08/12/2021

155. Murray, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000), together with costs, pre-judgment interest and reasonable attorney's fees.

### AS FOR A FIFTH CAUSE OF ACTION ON BEHALF OF FEIJOO AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

156. Feijoo repeats, re-alleges and incorporates in full paragraphs 1 through 155 of this Complaint as though fully set forth at length herein.

157. At the time Feijoo was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her race.

158. Throughout the time of her employment with Defendants, Feijoo was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

159. Defendants treated Feijoo less well because of her race and took adverse employment action against her by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

160. The circumstances surrounding Defendants' conduct towards Feijoo, including ignoring Feijoo's candidacy for newly restructured positions, despite her track record and experience leading the team that handled the operations later assigned to at least eleven (11) newly formed roles, as well as the condonation of racist professional development trainings and other presentations, gives rise to a very real inference that the actual basis for Defendants' actions towards Feijoo was race discrimination.

28

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                              RECEIVED NYSCEF: 08/12/2021

161.  The aforementioned acts of Defendants constitute unlawful discrimination against Feijoo in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... race . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

162.  As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Feijoo pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

163.  Feijoo has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Feijoo's human rights, all of which has impacted her well-being and the quality of her life.

164.  As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Feijoo has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Feijoo alleges to be in the amount of Ten Million Dollars ($10,000,000).

165.  Feijoo, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000).

29

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

### AS FOR A SIXTH CAUSE OF ACTION ON BEHALF OF FEIJOO AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

166.   Feijoo repeats, re-alleges and incorporates in full paragraphs 1 through 165 of this Complaint as though fully set forth at length herein.

167.   At the time Feijoo was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

168.   Throughout the time of her employment with Defendants, Feijoo was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

169.   Defendants treated Feijoo less well because of her gender and took adverse employment action against her by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

170.   The circumstances surrounding Defendants' conduct towards Feijoo gives rise to a very real inference that the actual basis for Defendants' actions towards Feijoo was gender discrimination.

171.   The aforementioned acts of Defendants constitute unlawful discrimination against Feijoo in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

30

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

172.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Feijoo pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

173.    Feijoo has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Feijoo's human rights, all of which has impacted her well-being and the quality of her life.

174.    As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Feijoo has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Feijoo alleges to be in the amount of Ten Million Dollars ($10,000,000).

175.    Feijoo, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Ten Million Dollars ($10,000,000), together with costs, pre-judgment interest and reasonable attorney's fees.

### AS AND FOR A SEVENTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST CARRANZA, INDIVIDUALLY, FOR AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(6) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

176.    Plaintiffs repeat, re-alleges and incorporate in full paragraphs 1 through 175 of this Complaint, as though fully set forth at length herein.

177.    As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Carranza aided, abetted and compelled the discrimination against Plaintiffs, so that Carranza should be held personally liable.

31

178.   The aforementioned acts of Carranza constitute unlawful aiding and abetting against Plaintiffs in violation of §8-107(6) of the New York City Human Rights Law, which states, *inter alia:*

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

179.   Carranza aided and abetted the City of New York to engage in the conduct complained of and, as a direct result, Plaintiffs each has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Carranza's conduct upon Plaintiffs' respective employment, career and life's normal pursuits.

180.   As a direct and proximate result of Carranza's violation of the New York City Human Rights Law, Carranza is individually liable to each Plaintiff pursuant to §8-502(a) of said statute for damages and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

181.   Plaintiffs, therefore, seek compensatory damages in this cause of action including, among other things, for loss of earning capacity and for the emotional pain and suffering each have been caused to suffer, which they each allege to be in the amount of Ten Million Dollars ($10,000,000).

182.   Plaintiffs each therefore, seek compensatory damages in this Fifth Cause of Action in the sum of Ten Million Dollars ($10,000,000) in damages, for a total of Thirty Million Dollars ($30,000,000) plus attorney's fees, pre-judgment interest and the costs of this action.

32

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM    INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                    RECEIVED NYSCEF: 08/12/2021

## AS FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF HERRERA AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

183.    Herrera repeats, re-alleges and incorporates in full paragraphs 1 through 182 of this Complaint as though fully set forth at length herein.

184.    At the time Herrera was subjected to the discriminatory conduct described herein, she was in a protected class because of her race, ancestry or ethnic characteristics.

185.    Throughout the time of her employment with Defendants, Herrera was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

186.    By the acts and practices set forth herein, the DOE and Carranza discriminated against Herrera in the terms and conditions of her employment on the basis of her race, ancestry or ethnic characteristics.

187.    Defendants took adverse employment action against Herrera because of her race, ancestry or ethnic characteristics by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

188.    The circumstances surrounding Defendants' conduct towards Herrera, including the condonation of racist professional development trainings and other presentations and demoting her and other high-performing Caucasian women in favor of less qualified employees of color, gives rise to a very real inference that the actual basis for Defendants' actions towards Herrera was race discrimination.

189.    The DOE's unlawful actions against Herrera were performed under color of law pursuant to a race-based policy and/or custom that Chancellor Carranza initiated, which

33

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM INDEX NO. 155316/2019

NYSCEF DOC. NO. 16                                          RECEIVED NYSCEF: 08/12/2021

represented the DOE's official policy, and were undertaken with malice or reckless disregard for

Herrera's rights.

190.   The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Herrera in violation of his constitutional right to Equal Protection under the

14th Amendment of the United States Constitution, which provides:

> No State shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall
> any State . . . deny to any person within its jurisdiction the equal
> protection of the laws.

191.   The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Herrera in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

("§1981"), which provides, inter alia, that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

192.   Herrera seeks redress for Defendants' violations of her rights pursuant to the Civil

Rights Act of 1871, 42 U.S.C. §1983 ("§1983"), which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress…

193.   As a direct and proximate result of Defendants' violation of §1983, Defendants are

liable to Herrera for damages, in an amount to be determined at trial, as well as reasonable

attorney's fees, pre-judgment interest and costs.

34

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                                RECEIVED NYSCEF: 08/12/2021

194.    Herrera, therefore, seeks compensatory damages in this Eighth Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

### AS FOR A NINTH CAUSE OF ACTION ON BEHALF OF HERRERA AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

195.    Herrera repeats, re-alleges and incorporates in full paragraphs 1 through 194 of this Complaint as though fully set forth at length herein.

196.    At the time Herrera was subjected to the discriminatory conduct described herein, she was in a protected class because of her gender.

197.    Throughout the time of her employment with Defendants, Herrera was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

198.    By the acts and practices set forth herein, Defendants discriminated against Herrera in the terms and conditions of her employment on the basis of her gender.

199.    Defendants took adverse employment action against Herrera because of her gender by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

200.    The circumstances surrounding Defendants' conduct towards Herrera, including the condonation of racist professional development trainings and other presentations and demoting her and other high-performing Caucasian women in favor of less qualified employees of color, gives rise to a very real inference that the actual basis for Defendants' actions towards Herrera was gender discrimination.

35

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM    INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                             RECEIVED NYSCEF: 08/12/2021

201.    Defendants' unlawful actions against Herrera were performed under color of state law pursuant to a gender-based policy and/or custom that represented the DOE's official policy, and were undertaken with malice or reckless disregard for Herrera's rights.

202.    The aforementioned acts of Defendants constitute unlawful discrimination on the basis of gender against Herrera in violation of her rights under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 et seq., and her constitutional right to Equal Protection under the 14th Amendment of the United States Constitution.

203.    Herrera seeks redress for Defendants' violations of his rights pursuant to §1983, which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

204.    As a direct and proximate result of Defendants' violation of §1983, Defendants are liable to Herrera for damages, in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

205.    Herrera, therefore, seeks compensatory damages in this Ninth Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

36

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16

INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

## AS FOR A TENTH CAUSE OF ACTION ON BEHALF OF MURRAY AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

206.   Murray repeats, re-alleges and incorporates in full paragraphs 1 through 205 of this Complaint as though fully set forth at length herein.

207.   At the time Murray was subjected to the discriminatory conduct described herein, she was in a protected class because of her race, ancestry or ethnic characteristics.

208.   Throughout the time of her employment with Defendants, Murray was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

209.   By the acts and practices set forth herein, the DOE and Carranza discriminated against Murray in the terms and conditions of her employment on the basis of her race, ancestry or ethnic characteristics.

210.   Defendants took adverse employment action against Murray because of her race, ancestry or ethnic characteristics by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

211.   The circumstances surrounding Defendants' conduct towards Murray, including the condonation of racist professional development trainings and other presentations, and demoting her and other high-performing Caucasian women in favor of less qualified employees of color, gives rise to a very real inference that the actual basis for Defendants' actions towards Murray was race discrimination.

212.   The DOE's unlawful actions against Murray were performed under color of law pursuant to a race-based policy and/or custom that Chancellor Carranza initiated, which

37

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM INDEX NO. 155316/2019
NYSCEF DOC. NO. 16 RECEIVED NYSCEF: 08/12/2021

represented the DOE's official policy, and were undertaken with malice or reckless disregard for

Murray's rights.

213. The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Murray in violation of his constitutional right to Equal Protection under the

14th Amendment of the United States Constitution, which provides:

> No State shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall
> any State . . . deny to any person within its jurisdiction the equal
> protection of the laws.

214. The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Murray in violation of §1981, which provides, inter alia, that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

215. Murray seeks redress for Defendants' violations of her rights pursuant to §1983,

which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress…

216. As a direct and proximate result of Defendants' violation of §1983, Defendants are

liable to Murray for damages, in an amount to be determined at trial, as well as reasonable

attorney's fees, pre-judgment interest and costs.

38

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

217.    Murray, therefore, seeks compensatory damages in this Tenth Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

### AS FOR AN ELEVENTH CAUSE OF ACTION ON BEHALF OF MURRAY AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

218.    Murray repeats, re-alleges and incorporates in full paragraphs 1 through 217 of this Complaint as though fully set forth at length herein.

219.    At the time Murray was subjected to the discriminatory conduct described herein, she was in a protected class because of her gender.

220.    Throughout the time of her employment with Defendants, Murray was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

221.    By the acts and practices set forth herein, Defendants discriminated against Murray in the terms and conditions of her employment on the basis of her gender.

222.    Defendants took adverse employment action against Murray because of her gender by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

223.    The circumstances surrounding Defendants' conduct towards Murray, including the condonation of racist professional development trainings and other presentations and demoting her and other high-performing Caucasian women in favor of less qualified employees of color, gives rise to a very real inference that the actual basis for Defendants' actions towards Murray was gender discrimination.

39

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                    RECEIVED NYSCEF: 08/12/2021

224.   Defendants' unlawful actions against Murray were performed under color of state law pursuant to a gender-based policy and/or custom that represented the DOE's official policy, and were undertaken with malice or reckless disregard for Murray's rights.

225.   The aforementioned acts of Defendants constitute unlawful discrimination on the basis of gender against Murray in violation of her rights under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 et seq., and her constitutional right to Equal Protection under the 14th Amendment of the United States Constitution.

226.   Murray seeks redress for Defendants' violations of his rights pursuant to §1983, which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

227.   As a direct and proximate result of Defendants' violation of §1983, Defendants are liable to Murray for damages, in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

228.   Murray, therefore, seeks compensatory damages in this Eleventh Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

40

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16   RECEIVED NYSCEF: 08/12/2021

### AS FOR A TWELFTH CAUSE OF ACTION ON BEHALF OF FEIJOO AGAINST DOE AND CARRANZA FOR RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983

229.    Feijoo repeats, re-alleges and incorporates in full paragraphs 1 through 228 of this Complaint as though fully set forth at length herein.

230.    At the time Feijoo was subjected to the discriminatory conduct described herein, she was in a protected class because of her race, ancestry or ethnic characteristics.

231.    Throughout the time of her employment with Defendants, Feijoo was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

232.    By the acts and practices set forth herein, the DOE and Carranza discriminated against Feijoo in the terms and conditions of her employment on the basis of her race, ancestry or ethnic characteristics.

233.    Defendants took adverse employment action against Feijoo because of her race, ancestry or ethnic characteristics by demeaning her because of her race, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

234.    The circumstances surrounding Defendants' conduct towards Feijoo, including ignoring Feijoo's candidacy for newly restructured positions, despite her track record and experience leading the team that handled the operations later assigned to at least eleven (11) newly formed roles, as well as the condonation of racist professional development trainings and other presentationsd, gives rise to a very real inference that the actual basis for Defendants' actions towards Feijoo was race discrimination.

235.    The DOE's unlawful actions against Feijoo were performed under color of law pursuant to a race-based policy and/or custom that Chancellor Carranza initiated, which

41

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM    INDEX NO. 155316/2019

NYSCEF DOC. NO. 16                                          RECEIVED NYSCEF: 08/12/2021

represented the DOE's official policy, and were undertaken with malice or reckless disregard for

Feijoo's rights.

236. The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Feijoo in violation of his constitutional right to Equal Protection under the

14th Amendment of the United States Constitution, which provides:

> No State shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall
> any State . . . deny to any person within its jurisdiction the equal
> protection of the laws.

237. The aforementioned acts of Defendants constitute unlawful discrimination on the

basis of race against Feijoo in violation of §1981, which provides, inter alia, that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

238. Feijoo seeks redress for Defendants' violations of her rights pursuant to §1983,

which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress…

239. As a direct and proximate result of Defendants' violation of §1983, Defendants are

liable to Feijoo for damages, in an amount to be determined at trial, as well as reasonable attorney's

fees, pre-judgment interest and costs.

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

240.   Feijoo, therefore, seeks compensatory damages in this Twelfth Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

**AS FOR A THIRTEENTH CAUSE OF ACTION ON BEHALF OF FEIJOO
AGAINST DOE AND CARRANZA FOR GENDER DISCRIMINATION
IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983**

241.   Feijoo repeats, re-alleges and incorporates in full paragraphs 1 through 240 of this Complaint as though fully set forth at length herein.

242.   At the time Feijoo was subjected to the discriminatory conduct described herein, she was in a protected class because of her gender.

243.   Throughout the time of her employment with Defendants, Feijoo was fully qualified for her position and was in a position to continue working in that capacity for the remainder of her career.

244.   By the acts and practices set forth herein, Defendants discriminated against Feijoo in the terms and conditions of her employment on the basis of her gender.

245.   Defendants took adverse employment action against Feijoo because of her gender by demeaning her because of her gender, demoting her and denying her employment opportunities, all of which was permitted and condoned by Defendants.

246.   The circumstances surrounding Defendants' conduct towards Feijoo, including the condonation of racist professional development trainings and other presentations and demoting her and other high-performing Caucasian women in favor of less qualified employees of color, gives rise to a very real inference that the actual basis for Defendants' actions towards Feijoo was gender discrimination.

43

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM
NYSCEF DOC. NO. 16
INDEX NO. 155316/2019
RECEIVED NYSCEF: 08/12/2021

247.    Defendants' unlawful actions against Feijoo were performed under color of state law pursuant to a gender-based policy and/or custom that represented the DOE's official policy, and were undertaken with malice or reckless disregard for Feijoo's rights.

248.    The aforementioned acts of Defendants constitute unlawful discrimination on the basis of gender against Feijoo in violation of her rights under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 et seq., and her constitutional right to Equal Protection under the 14th Amendment of the United States Constitution.

249.    Feijoo seeks redress for Defendants' violations of his rights pursuant to §1983, which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

250.    As a direct and proximate result of Defendants' violation of §1983, Defendants are liable to Feijoo for damages, in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

251.    Feijoo, therefore, seeks compensatory damages in this Thirteenth Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

**WHEREFORE**, Plaintiff Lois Herrera demands judgment against Defendants on the First Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages; Plaintiff Lois Herrera demands judgment against Defendants on the Second Cause of Action in the

44

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM

NYSCEF DOC. NO. 16

INDEX NO. 155316/2019

RECEIVED NYSCEF: 08/12/2021

sum of Ten Million ($10,000,000) Dollars in compensatory damages; Plaintiff Jaye Murray demands judgment against Defendants on the Third Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages; and on the Fourth Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages; Plaintiff Laura Feijoo demands judgment against Defendants on the Fifth Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages; and on the Sixth Cause of Action in the sum of Ten Million ($10,000,000) Dollars in compensatory damages; and, in the alternative, Plaintiffs demand judgment against Defendant Richard Carranza, individually, on the Seventh Cause of Action in the sum of Thirty Million Dollars ($30,000,000) in compensatory damages; Plaintiff Lois Herrera demands judgment against Defendants on the Eighth and Ninth Causes of Action in an amount to be determined at trial; Plaintiff Jaye Murray demands judgment against Defendants on the Tenth and Eleventh Causes of Action in an amount to be determined at trial; Plaintiff Laura Feijoo demands judgment against Defendants on the Twelfth and Thirteenth Causes of Action in an amount to be determined at trial; so that, for all causes of action, Plaintiffs seek a total of at least Ninety Million ($90,000,000) Dollars, plus costs, pre-judgment interest and attorney's fees as permitted under the law, and for such other relief as this Court deems just and proper.

SCHWARTZ PERRY & HELLER, LLP
*Attorneys for Plaintiffs*

By:

DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565

45

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019

NYSCEF DOC. NO. 16                                                   RECEIVED NYSCEF: 08/12/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------------X
LOIS HERRERA, JAYE MURRAY and                      **Index No.: 155316/2019**
LAURA FEIJOO,

                    *Plaintiffs,*                      <u>**VERIFICATION**</u>

    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
and RICHARD CARRANZA, Chancellor of New York
City Department of Education, Individually,

                    *Defendants.*
---------------------------------------------------------------------------X

STATE OF NEW YORK     )
                        )ss.
COUNTY OF NEW YORK  )

    LOIS HERRERA, being duly sworn, says:

    I am the Plaintiff in the within action; I have read the foregoing Second Amended

Complaint and know the contents thereof; the same is true to my knowledge, except as to the

matters therein stated to be alleged on information and belief, and as to those matters, I believe

them to be true.

                                      _____
                                        LOIS HERRERA

Sworn to me this 24ᵗʰ
day of June 2021

_____
NOTARY PUBLIC

DAE SON KIM
Notary Public, State of New York
License Number 01KI6393677
Expiration Date 04/04/2023
Qualified in Westchester County

47

FILED: NEW YORK COUNTY CLERK 08/12/2021 10:55 AM   INDEX NO. 155316/2019
NYSCEF DOC. NO. 16                                    RECEIVED NYSCEF: 08/12/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

LOIS HERRERA, JAYE MURRAY and                    Index No.: 155316/2019
LAURA FEIJOO,

                    *Plaintiffs,*                         **VERIFICATION**

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
and RICHARD CARRANZA, Chancellor of New York
City Department of Education, Individually,

                    *Defendants.*

------------------------------------------------------------------------X

STATE OF NEW YORK       )
                        )ss.
COUNTY OF NEW YORK      )

          JAYE MURRAY, being duly sworn, says:

          I am the Plaintiff in the within action; I have read the foregoing Second Amended

Complaint and know the contents thereof; the same is true to my knowledge, except as to the

matters therein stated to be alleged on information and belief, and as to those matters, I believe

them to be true.

                                                    _____
                                                    JAYE MURRAY

Sworn to me this 26ᵗʰ
day of June 2021

_____
NOTARY PUBLIC

DAE GON KIM
Notary Public, State of New York
License Number: 01KI8362677
Expiration Date: 08/13/2023
Qualified in Westchester County

46

Case 1:21-cv-07555-MKV  Document 1-3  Filed 09/10/21  Page 48 of 48

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------X

LOIS HERRERA, JAYE MURRAY and
LAURA FEIJOO,

                  *Plaintiffs,*

      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
and RICHARD CARRANZA, Chancellor of New York
City Department of Education, Individually,

               *Defendants.*

---------------------------------------------------------------X

**Index No.: 155316/2019**

**VERIFICATION**

STATE OF NEW YORK    )
                      )ss.
COUNTY OF NEW YORK  )

     LAURA FEIJOO, being duly sworn, says:

     I am the Plaintiff in the within action; I have read the foregoing Second Amended

Complaint and know the contents thereof; the same is true to my knowledge, except as to the

matters therein stated to be alleged on information and belief, and as to those matters, I believe

them to be true.

                                              LAURA FEIJOO

Sworn to me this 24th
day of June 2021

NOTARY PUBLIC

RAYMOND ARDITO
NOTARY PUBLIC-STATE OF NEW YORK
No. 02AR5038975
Qualified in Nassau County
My Commission Expires February 13, 2023

48